### Jackson ex dem. E. Doran and others, *vs.* Green.

No one who is obliged to trace his descent through *an alien* can inherit real estate, if the death of the owner happened *previous* to the 1st January, 1830, until when, the statute, 11 and 12 Wm. III. ch. 6, was not incorporated into our law of *descent*; so HELD, where the children of a *naturalized citizen* claimed that their father was the heir of a *naturalized citizen*, they being obliged to trace their descent through their grand mother, who was an alien.

*It seems*, however, that this rule would not apply where the claimant was a brother of the person last seised; the descent from brother to brother is considered *immediate;* but not so from cousin to cousin.

THIS was an action of ejectment, tried at the New-York circuit in October, 1828, before the Hon. OGDEN EDWARDS, one of the circuit judges.

Felix Cunningham an *Irishman*, became a *naturalized citizen* of this country in 1806, and in 1821 died without issue, seised and possessed of a house and lot in the city of New-York, the premises in question, purchased by him after his naturalization. The lessors of the plaintiff are the children and heirs at law of James Doran, also an *Irishman*, a first cousin of Cunningham, their mothers being sisters. James Doran

was *naturalized* in 1811, and died in 1825. The father and mother of Cunningham were both dead at the time of his decease—they left descendants who are all *aliens.* Whether the *mother* of James Doran was or was not living at the time of the death of Cunningham, was not shewn; but he had two older brothers, named Patrick and John, who, and their mother, were *aliens.* A verdict was entered by consent for the plaintiff, subject to the opinion of this court.

*P. W. Radcliff,* for the plaintiff, insisted that the kinsman *ex parte paterna* of Felix Cunningham being *aliens,* the title descended to James Doran, his maternal cousin, who being a *naturalized citizen,* was capable of taking; that the descent from Cunningham to Doran was direct and *immediate,* notwithstanding the circuity in the line of consanguinity, which, he insisted, was referred to merely to ascertain the *person* entitled, and not for the purpose of deducing title in such line; and that the claim of Doran was not founded upon a *right by representation,* but upon the fact of his being the *next of kin* capable of taking the estate, and as such entitled in his *own right.*

*R. Emmet,* for defendant, insisted that the descent was not immediate, that it must necessarily be traced through the mother of Doran, and she being an *alien,* there could be no recovery.

*By the Court,* SAVAGE, Ch. J.   The question in this case is, whether the children and heirs at law of James Doran are entitled to inherit the real estate of Felix Cunningham, or whether it escheats to the state.   It is contended on the part of the plaintiff, that upon the death of Cunningham, the estate passed to James Doran, who was then living.

An alien cannot hold real estate by descent, though he may by purchase until office found; but if he dies before office found, the property will escheat.   An alien by the common law has no inheritable blood through which a title can be deduced, and cannot transmit the estate.   2 Kent's Comm. 46. Naturalization gives the alien all the rights of a natural born citizen; he thereby becomes capable of receiving property by

descent, and of transmitting it in the same way. It has also a retroactive operation ; and lands purchased by an alien who is afterwards naturalized may be held by him, and transmitted by him in the same manner as lands acquired after naturalization. In the case before us, both Cunningham and Doran had inheritable blood, by reason of their naturalization; when the former died, his estate vested in his heirs, if he had any capable of taking ; if he had none such, the estate escheated, not on the ground of alienism, but for want of heirs.

Cunningham and Doran, both being citizens, had capacity to transmit and to take by descent, provided that descent be immediate ; but the difficulty in this case arises from the fact that Doran must inherit, if at all, through *alien* ancestors. It is stated by Coke, Co. Lit. 8, that if there be two sons subjects, the father an alien, if one of the sons be seised of land and die, the other cannot inherit, because there was no inheritable blood between the father and the sons, and when the sons cannot be heir to the father, neither shall be heir to the other —this doctrine must have rested upon the supposition, that the surviving brother must inherit, if at all, through the father, and as the father could not inherit, so neither should the son. A contrary doctrine was established in *Collingwood* v. *Pace*, 1 Ventr. 413. It was there held that one brother should inherit from the other, because the descent between brothers was *immediate*, as from father to son ; not that he could derive title through the alien father. The father could never inherit from his son, though a natural born subject, because inheritances in England never lineally ascend. 2 Black. Comm. 208.

As this case must be determined according to the rules of the common law, not being embraced in any of our statute alterations, it will be proper to refer to some of the canons of *descent*. 1. The first rule laid down by Blackstone is, that inheritances shall lineally descend to the issue of the person who last died actually seised in *infinitum*, but shall never lineally ascend. 2d. The male issue shall be admitted before the female. 3d. When there are two or more males in equal degree, the eldest only shall inherit ; but the females all together. 4th. The lineal descendants in *infinitum* of any person de-

ceased shall represent their ancestor. 5th. On failure of lineal descendants, or issue of the person last seised, the inheritance shall descend to his collateral relations, being of the blood of the first purchaser; subject to the three preceding rules. 6th. The collateral heir of the person last seised must be his next collateral kinsman of the whole blood. 7th. In collateral inheritances, the male stocks shall be preferred to the female, unless where the lands have in fact descended from a female. Our statute of 23d February, 1786, altered the common law in five particulars: 1st. When the person dying seised leaves several persons lawful issue, of equal degree in lineal descent, they shall inherit equally; 2d. If such issue are of different degrees of consanguinity, they shall inherit *per stirpes*, and not *per capita*; 3d. If there be no issue, then the father, if living, inherits, unless the property came from the mother; 4th. If there be neither issue nor father, the brothers and sisters shall inherit equally, including those of the half blood, unless the property descended from an ancestor, and then it shall remain in the blood of such ancestor; 5th. If any of the brothers, &c. be dead, leaving issue, such issue shall take the share of their parent—in all other cases of descent, it was declared the common law shall govern. Our revised statutes have made several important alterations in the law of descents, which, however, need not be stated here, except one provision which may have an influence in showing the opinion of the legislature on the point in controversy in this cause; it is as follows: " no person capable of inheriting under the provisions of this chapter, shall be precluded from such inheritance by reason of the alienism of any ancestor of such person." 1 R. S. 754, § 22.

Having thus stated the canons of the common law and our statute modifications of them, it will be seen that the case under consideration is one which must be decided by the common law. Felix Cunningham had no issue, no brothers or sisters, no uncles or aunts capable of inheriting. He did leave these relatives, but they are excluded by reason of their alienism; the male line being therefore legally extinct, we must look to the female line, in the language of Blackstone, "leaving no place untried, in order to find heirs that may, by possibility, be derived from the original purchaser." We then

find a sister of the mother of Felix Cuningham, who, by the common law, but for her *alienism*, is capable of inheriting, though the mother is not. And here it may not be improper to notice an absurdity in the law of descents which was never corrected in our own state until the revised statutes took effect, to wit, that the *mother* could never inherit from her children, though *her sister* might; but our proper business now is to ascertain who is entitled by law, though we may not see the reason of the law. That sister is Eleanor Curran, who, for aught appearing in the case, is still living in Ireland, an alien. The case states that she married a man by the name of Doran, and that she had three sons, Patrick, John and James. Patrick and John are still living in Ireland, aliens; James was naturalized in New-York, and died, leaving the lessors, his children and heirs at law. Suppose, then, that Eleanor Doran, the natural aunt of Felix Cunningham, is living, and an alien, what becomes of the estate? But for her alienism, she would be the heir at law of Felix Cunningham, upon the facts stated in the case. Being an alien, she cannot take it, "for the law, *quæ nihil frustra facit*, will not give her an inheritance or freehold by act of law, for she cannot keep it." 1 Ventris, 417. I consider the argument of Ch. Baron Hale in the case of *Collingwood* v. *Pace.* as containing the correct rule of law on this subject. He states several cases to illustrate his argument, thus : "A. and B. brothers, A. is an alien, or attainted, and hath issue C., a denizen born ; B. purchaseth lands, and dies without issue, C. shall not inherit; for A. (which was the *medius* ancestor, or *medium differens* of this descent,) was incapable. Gray's case, Dyer, 274. Again ; A. and B. brothers, A. is an alien, or attainted, and hath issue C. and dies, and C. purchaseth lands and dies without issue ; B. his uncle, shall not inherit, for the reason beforegoing, for A. is the *medius* ancestor, which was disabled." This was Courtney's case, 3 Inst. 241, According to this case, Eleanor Doran could not take if she was a citizen, because the descent to her is mediate, not immediate, and the *medius*, the mother of Felix Cunningham, through whom she, E. Doran, must derive title, having no inheritable blood, no estate.

'of inheritance can be derived through her. Lord Hale divides descents into lineal and collateral, and each of those into mediate and immediate. *Lineal* descent from father to son is *immediate*; from grand father to grand son is *mediate*, the father being the medium of the descent. *Collateral* descent from brother to brother is immediate, taking no notice of the father; but from uncle to nephew, or nephew to uncle, the descent is mediate, the father being the medium through which the descent must pass. Hence one brother may inherit from another, though the father be an alien, or attainted; but a grand son cannot inherit from his grand father, the father having died in the life of the grand father, provided the father was an alien, or attainted; but the land shall escheat. The reason is, the father, the medium through whom the title must pass, being incapable of receiving, is incapable of transmitting it. An alien " in respect of incapacity, resembles a person attainted; yet with this difference, the law looks upon a person attaint as one that it takes notice of; and therefore the eldest son attaint, overliving his father, though he shall not take by descent in respect of his disability, yet he shall hinder the descent of the younger son; but if the eldest son be an alien, the law takes no notice of him, and therefore as he shall not take by descent, so he shall not impede the descent to his younger brother." So in 3 Salk. 129: "There were three brothers, all aliens, the two younger were naturalized, and the eldest had issue, then the third brother died; adjudged that his lands cannot descend to his eldest brother, or to his issue, because he was incapable himself, and his issue cannot come in but by representation, so they shall descend to the second brother." This point was so decided in this court in *Jackson* v. *Lunn*, 3 Johns. C. 121. Kent, justice, says, that an alien cannot take by descent, because he cannot keep the estate, and therefore the law takes no notice of an alien heir. The title passes *by* him, but it never passes *through* him. In *Jackson* v. *Jackson*, 7 Johns. R. 214, it was held, that where there was a failure of inheritable blood by reason of alienism, the lands do not escheat, but go to the next heir; but it will be seen by an examination of that case, that the next heir who

took the land *did not make title through the alien.* In that case there were two brothers, citizens, Thomas and Leonard Lewis; Leonard went to St. Thomas, a Danish island; had two daughters by a Danish subject, one whom died without issue, the other had a daughter, who was an alien; the mother died first, and then the daughter, an infant, died. The heirs of Thomas were held to be the owners of the estate, not as heirs of the infant daughter, who was an alien, and could not have inherited had she lived, but as the heirs of the surviving daughter of Leonard Lewis, who was a citizen, as the court said, by virtue of the statute of 3 Geo. II. ch. 21. The alien child was neither the *medium sanguinis,* nor *medium hereditatis* In this case the aunt of Felix Cunningham was not related to him, only through her sister, the mother of Felix Cunningham.

Suppose, however, Eleanor Doran to be dead, then James Doran's heirs claim as the heirs at law of Felix Cunningham, and must derive title through his *mother* and his *aunt,* who were both aliens. Patrick and John Doran, the elder brothers of James, being aliens, could not take, and therefore shall not impede the descent : this is an instance which shews the application of the rule that an alien who cannot take, shall not impede the descent. If Eleanor Doran were a citizen, and the owner of the property in question, and her two eldest sons aliens, the third a citizen, the property shall not escheat, because the government cannot take it so long as there is an heir to the last owner, who derives title by passing *by,* not *through* the alien sons. The lessors of the plaintiff cannot berive title in any other manner than *through aliens ;* they therefore cannot take at the common law. The statute 11th and 12th Wm. III. ch. 6, was intended to apply to such a case, by enabling natural born subjects to inherit the estate of their ancestors, either lineal or collateral, notwithstanding the ancestors, through whom they derive title were aliens ; but this statute has never been adopted here until the last revision of our statutes, which cannot affect this case ; and if adopted, would not authorize the deduction of title through an *alien* ancestor still living. 2 Kent's Comm. 48.

In the case of *Orr* v. *Hodgson*, 4 Wheaton, 453, it was held that though an alien may take by purchase, he cannot by descent: and that when a citizen dies, and the next of kin are aliens, they cannot take, but the inheritance passes to those next entitled, who are capable of taking. This case, in its leading facts, is like *Jackson* v. *Jackson*, 7 Johns. R. 214. Philip Ludwell, a Virginian, had two daughters, Hannah and Lucy. He removed to England with them, where Hannah married William Lee, a Virginian, by whom she had two daughters, the defendants. Lucy Ludwell married a British subject, John Paradise, by whom she had a daughter Lucy, who married a Venetian, and had two sons, aliens, and died. After the death of Paradise, in 1789, his widow, who was Lucy Ludwell, returned to Virginia, took possession of the lands in question, and died in possession, in 1814. It was held that her grand sons being aliens, could not take by descent, nor could they prevent the descent to the nieces of their grand mother, who were citizens, and therefore capable of taking by descent. In this case it will be remarked that the defendants, the nieces, did not derive title *through aliens*, their own parents being citizens, and the property of their aunt, and her capacity to hold and transmitt being secured by treaty. The case of *M'Creery's lessee* v. *Somerville*, 9 Wheaton, 354, was supposed by the counsel for the plaintiff in this cause to have been at variance with *Orr* v. *Hodgson*, but I do not so understand it. In this case the lessor of the plaintiff claimed as heir at law to her uncle, who died without issue and intestate; for though he made a will, it was defective, and did not pass real estate. The father was an alien, and still living, though the lessor was a natural born citizen. Mr. Justice Story said, " It is perfectly clear that at common law, her title is invalid, for no person can claim lands by descent through an alien, since he has no inheritable blood." The learned judge then proceeds to shew that the statute 11 and 12 Wm. III. ch. 6, did not allow the lessor to inherit during the life of her father, though he was an alien, and could not take the inheritance.

I consider it well settled, both upon English and American authority, that a citizen cannot inherit through an alien at the

common law, and as the statute 11 and 12 Wm. III. ch. 6, was never adopted in this state until the last revision of our statutes, since the death of Felix Cunningham, the question in this case must be determined by the common law. I am therefore of opinion that the defendant is entitled to judgment.