By the Court,

Bronson, J.
Under the will of Manuel Myers, his widow, Judith, took an estate for life in the lands; and the nine other devisees named in the will took a vested remainder in fee, as tenants in common. Although the devisees in remainder were aliens, they could take lands by purchase, which includes a title by devise, though they could not hold as against the state. There is no difference in this re-, spect between a title by devise, and any other form of acquiring the land by purchase. (Fairfax's devisee v. Hunter's lessee, 7 Cranch, 603, 619. Vaux v. Nesbit, 1 McCord's Ch. R. 352. 1 Powell on Dev. 259, ed. 1838.) The clause which follows in the will, relating to the issue of such of the devisees in remainder as might die before a division of the property, was, I think,- only intended to express more fully the purpose of the testator that the devisees should take as tenants in common, so that the share of any one who might die during the continuance of the life estate should go to his or her heirs, and not to the surviving devisees. I do not, therefore, think it necessary to consider the questions which might arise if this clause were regarded as an independent provision, intended to give a new direction to the estate on the death of one *70 of the nine devisees, leaving issue, before a division of the property. The testator disposed of the whole estate to the widow and other devisees named in the will, without any devise over.
It follows from this view of the case," that Edward Englehardt cannot take the share of his father Josel—one ninth part of the property—as a devisee. He must make title to that share as heir at law to his father; and then, there are several difficulties in his way. He was an alien, not only at the death of the testator, but at the death of his father; and an alien, although he may take lands by purchase, cannot take by descent; for the law, which does nothing in vain, will not cast an estate lipón one who cannot hold it.
There is nothing in the suggestion that the descent was suspended until the death of the tenant for life. The. fee was not in abeyance. The remainder was clearly vested in interest, though not in possession; and although the remainder-men died «before they were entitled to the possession, their estate would undoubtedly have descended had they left heirs capable of inheriting it. But they left no such heirs. Edward Englehardt was afterwards naturalized; but that will not help him, for the capacity to take must exist at the time "the descent happens. In answer to this objection we were referred to cases where it has been held, that naturalization sometimes has a retroactive effect, and confirms a defective title previously vested in the alien. Those are cases where the alien had acquired lands by purchase, in which mode he may take, and was then naturalized before office found. But in this case, the alien must claim by" descent; and as he could not take lands in that way, he had no estate or title to be confirmed by the naturalization. He took nothing on the death of his father; and naturalization, though.it may confirm a defective title, will not confer an estate.
But if Edward Englehardt had been a native citizen of this state, I do not see how he could make title to his father’s share of the property. His father Josel, who was *71 himself an alien, had no inheritable blood, and could not transmit the estate to his posterity. (2 Kent's Com. 54, 4th ed.) There is another form of stating the difficulty, which comes to the same thing. Although an alien may take lands by devise, or in any other form of purchase, he cannot hold as against the state. The people may immediately enter—■ formerly by writ of escheat, and now by ejectment—and oust him of the possession. If the alien convey before office found, the purchaser will not acquire a title, as against the state; and if he die and the heir enter, he must take the land, if he can take at all, subject to the prior and better title of the people by escheat. In this case, the title of the people dates back to the death of Manuel Myers, and overreaches the subsequent descent, if there could be one, from Josel to his son Edward. The descent could not take away the title by escheat which had already vested in the people.
0 Edward Englehardt cannot, therefore, make title to any part of the property as heir at law to his father.
It is then said, that Edward is entitled to the whole of the property as the heir at law of Manuel Myers, his great uncle. There are several insuperable objections to this claim. 1. Edward was an alien at the time Manuel 'Myers died, and consequently incapable of taking by descent. 2. He is obliged to trace the descent through his father Josel, and his grand-mother Speula, the sister of Manuel Myers, both of whom were aliens ; and at the common law no one can make title by descent through an alien ancestor. The statute of 1830 will not help him, because it was passed since the death of Manuel Myers. (Jackson v. Green, 7 Wendell, 333. Jackson v. Fitz Simmons, 10 id. 9. And see The People v. Irvan, 21 id. 128.) And 3. Manuel Myers disposed of the whole estate, and there was nothing left to descend to his heirs. The remaindermen, though aliens, could take and hold until office found. The heir could not enter upon them. They had a good title, except as against the state. (1 Powell on Dev. 259, edj. of 1838. Fairfax's devisee v. Hunter's lessee, 7 Crunch, 603, *72 619. Vaux v. Ncsbit, 1 McCord's Ch. R. 352.) It is quite clear, therefore, that Edward cannot make title as heir to Manuel Myers.
But it was said, that there could be no escheat so long as there was a lawful tenant of the freehold : or, in other words, that the remainder in fee dependent on the life estate of Mrs. Myers, could not escheat until her death in 1832; and at that time, Edward Englehardt, having been previously naturalized, had a capacity to take and hold as heir. The books to which we were referred in support of this position do not bear the counsel out. Of the authorities cited, the one which seems most in point, is Fitz. N. B. 144, B. But the learned author was not there speaking so particularly of the title by escheat, as he was of the form of the remedy. After putting a case where the lord shall have a writ of escheat, he adds, in the passage cited—“ But if a man be a tenant for life, the remainder in fee unto a stranger and his heirs, and afterwards' the stranger [remainderman] dieth without heir, and afterward the tenant for life dieth; the lord shall not have a writ of escheat, because the tenant for life was tenant to the lord, and not he in the remainder. But there the lord shall have a writ of intrusion, if a stranger enter on the land after the death of tenant for life.” Whether a “ writ of escheat,” or of “ intrusion,” was the most appropriate remedy in the case put, we need not inquire, for in this state the remedy is now by ejectment in all cases. (1 R. S. 282, § 1.) Fitzherbert does not say, that the remainder could not escheat so long as the life estate continued, but the contrary may be inferred from his language. He says, “ the lord shall have a writ of intrusion"—thus giving him the same remedy against the stranger who entered after the death of the tenant for life, that the remainderman would have had, if living. (See F. N. B. 203. 3 Black. Com. 168, 9.) But we need not resort to any doubtful inference to show that a remainder or reversion may escheat. Fitzherbert, himself, tells us at another page, that there is in the Register the form of a “ writ of waste for the lord by escheat, who *73 hath the reversion by escheat.” (P. 58, G.) Thus it will be seen, that the lord may not only take a- reversion by escheat, but that he has the same remedy for waste done by the tenant for life that the reversioner would have had, if living. And to that effect is Viner, Escheat (L.) pi. 4, 5, 14.) And according to Lilt. § 348, and Co. IAt. 215, (6), the lord may have the reversion by escheat, and distrain on the tenant for life for the subsequently accruing rent. {And see Cruise's Dig. tit. 30, § 35.) “ A reversion is held, as well as the particular tenancy, and it shall escheat to the lord.” (Vin. Abr. Es-cheat (C), pi. 4.) “If reversion escheats to the lord, and the tenant for life dies, and a stranger abates, writ of intrusion lies.” Again: “If tenant [in fee] leases for life, and dies without heir, and the tenant for life dies, the lord shall have the writ of escheat; for the tenant [in fee] did not die seised, and also the reversion was vested in the lord before, and therefore may have a writ of intrusion, or enter and have assize.” {Viner, Escheat {I. 2,) pi. 1, 3.) It is quite obvious, that so far as relates to the present inquiry, there can be no difference between a reversion and a remainder. But Viner, {Escheat (A), pi. 12,) says, “if he in remainder be attainted of felony, it [the remainder] shall escheat.” Again: “If a remainder escheats, and the lord brings action of waste, the writ shall be, which he holds of him.” {Vin. Escheat {L), pi. 19. And see Com. Dig. Escheat, {B. 2.) Watkins on Descents, 4, and note {m), Bond. ed. 1801.) After mentioning in the text, that a remainder of inheritance, whether vested or contingent, is transmissible to the heirs of the person to whom limited, he adds in the note, that “ consequently, where such remainder is in fee, it shall escheat for default of heirs. And the lord may maintain waste, as the remainderman might have done. But he shall not have a writ of escheat during the life of the particular tenant; though he shall have a writ of intrusion if a stranger enter on his [tenant’s] death. For a remainder is held of the lord, as well as a reversion, or particular tenancy. But note,” he says, “ this is confined to a remainder in fee; for *74 a remainder in tail is held of the donor, and consequently, cannot escheat to the lord of whom it is not holden.” These authorities are full to the present purpose; and they show, that a remainder or reversion will escheat, as well as an estate in possession; and that the lord may have the same remedies against the tenant for life for waste done, or rent in arrear, that the reversioner or remainderman had while the estate continued in him. In short, the lord takes the interest and comes into the place of him who had the reversion or remainder.
There are with us two cases in which lands escheat. First, where the tenant in fee dies seised, leaving no heir capable of inheriting the property, and making no valid disposition of it by will; and second, where lands are purchased by an alien, who cannot hold as against the state. In both of these cases, the property immediately reverts to, and vests in the people, as the original and ultimate proprietors of all the lands within the state. If there be an outstanding life estate, the people will not be entitled to the possession until that estate has terminated; but this cannot affect their title to the fee.
In this case, if the devise in fee was void on the ground that the devisees were aliens, then the reversion continued in the testator; and on his death without lawful heir, it vested in the people by escheat. But if, as I take the law to be, the devise in fee was valid, then the .devisees took an estate, which, being aliens, they could not hold, and the remainder vested in the people by escheat. In either way, the people, immediately on the death of Manuel Myers, were entitled to the whole estate, subject only to the interest of Mrs. Myers as tenant for life.
If the power to sell contained in the will of Manuel Myers would continue after an entry for the escheat, that would not prevent a recovery in this action. The people would take and hold the land subject to the power,- which might. then be executed by public officers, instead of the executor. (1 R. S. 718, § 2. Statutes of 1831, p. 158, ch. 116.) But if the power is not gone already, an entry *75 for the escheat will put an end to it. The recovery will defeat the whole estate and interest of the alien devisees, and the power, which was only given for the purpose of facilitating partition among them, must fall of course.
I have considered this case as though Edward Englehardt were now claiming the property, though so far as appears, the defendant is a mere intruder into the land, and has no legal interest in the question.
Judgment for the people.