STEMPLE v. HERMINGHOUSER.

The non-resident foreigner cannot inherit the estate of his resident parent.
GREENE, J., contra.

ERROR *to Lee District Court.*

*Opinion by* KINNEY, J.   Christian William Stemple, a native of Prussia, imigrated to the State of Iowa, and purchased about eleven hundred and seventy-eight acres of land in Lee county.   On the 23d day of October, 1849, Stample died intestate, leaving a number of children residents of the United States, and also a number natives of, and residents in Prussia.

Herman Stemple, one of his said children, residing in Lee county, Iowa, filed a petition in the district court, praying for a partition of the lands of said Christian William Stemple, deceased, and an allotment of the same among his children residing in the United States at the time of his death; and alleging that the other children residing in Prussia at that time, were not entitled to any interest in the said lands.

Notice of the pendency of this petition was given to all the children of said Stemple residing in this country, and without any other, or further notice by publication or otherwise to the *non*-resident children, application was made for the appointment of commissioners to divide and allot said lands.   This application the court refused, on the ground, that notice should have been given to the non-resident children of said Stemple.   The bill of exceptions however, shows that a decree was rendered against the petitioner *pro forma*, in order to have the question definitively settled by this court.

The only question presented for decision is, can non-resident aliens take land by descent in this State.   This

question is easily answered, unless by constitutional provision, or legislative enactment, the rule at common law has been changed. It is the well settled doctrine of the books, that at common law, an alien cannot acquire a title to real property by descent, or created by other mere operation of law. *Calvin's Case,* 7 *Co.,* 25 a., 1 *Vt.,* R., 417; *Jackson* v. *Lunn,* 3 John. Cases, 109; *Hunt* v. *Warwike,* Hardin's R. R. 261. The law *quæ nihil frustra* never casts the freehold upon an alien heir who cannot keep it. Therefore where a person dies, leaving issue who are aliens, the latter are not deemed his heirs at law. They have no inheritable blood, and the estate descends to the next of kin who have inheritable blood, in the same manner, as if no such alien issue were in existence. *Orn* v. *Hodgson,* 4 Wheat. 453; *Jackson* v. *Green,* 7 Wend. 333; *Jackson* v. *Fitz Simmons,* 10 ib, 9.; *Orser* v. *Hoag,* 3 Hill, 79; 2 Kent Com., 3d ed. 53.

It is a general rule, that even a natural born subject, cannot take by representation from an alien, because the alien has no inheritable blood through which a title can be deduced. If therefore a person dies intestate, without issue, and leave a brother who had been naturalized, and a nephew who had been naturalized, but whose father died an alien, the brother succeeds to the whole estate, for the nephew is not permitted by the common law to trace his descent through his alien father. *Levi* v. *McCarty,* 6 Peters U. S. R. 102; 2 Kent, 54. It has also been held upon good authority, that, though an alien be afterwards naturalized, he cannot secure the estate, and this for the reason, that the fee will not rest in abeyance. The capacity to take must exist at the time the descent happens. Naturalization may confirm a defective title, but will not confer an estate.

It may be assumed as the settled doctrine of the common law, that an alien can never take by the act of the law, as by descent, for he has no inheritable blood.

A*

4 Black Com. 249; *Fairfax* v. *Hunter*, 7, Cranch 603, 619; *Vanx* v. *Nesbit*, 1 McCord, Ch. R. 352; *Orr* v. *Hodgson*, 4 Peter Cond., 506; 2 Black. Com., 149. It is clear then, that at common law those children of Christian William Stemple, who were alien foreigners at the time of his death, were not, nor could they be heirs to the estate in Iowa, and therefore had no interest in the proceeding for partition, and should not have been made parties, or notified by publication. Does our constitution change this rule, and are they by that instrument endowed with an inheritable capacity? The ordinance of 1787, and statutes of the Territory of Iowa including those of Michigan, and Wisconsin in force in the Territory, did not alter the rule of the common law. Neither by common law, nor by these statutes, could alien residents, or non-residents take land by descent.

The statute regulating the descent of property in Iowa, at the adoption of the constitution, was that of February 13, 1843, and provides that the lands of any person dying intestate, shall descend in equal shares to his children. This evidently means such children as have inheritable blood; for it being an inflexible rule at common law, that aliens, resident or non-resident, are not heirs, cannot take by descent, nothing less than a plain and express provision in relation to them will change this rule. Then at the adoption of the constitution the common law doctrine prevailed.

The 22 §, 1 Art., is as follows: "Foreigners who are, or who may hereafter become residents of this State, shall enjoy the same rights in respect to the possession, enjoyment and descent of property, as natural born citizens."

Here is a material change in favor of the foreigner. It being a part of the wise policy of our government to encourage the emigration and settlement of foreigners; to place them as nearly as possible upon an equal footing with native born citizens, to secure to them the possession and inheritance of real property, this wholesome provision

Stemple *v.* Herminghouser.

was engrafted into the fundamental law of the state. But it will be observed that this applies only to *resident* foreigners, and those who may become *resident*. Before the adoption of the constitution none, except native and adopted citizens, could inherit by descent. Since the constitution, *resi dents*, though aliens, occupy the same position, in this respect, as native born citizens. So far as *non-resident aliens* are concerned, while they remain such, the common law is unchanged. If they become residents of Iowa, they then enjoy the same rights of property as native born citizens.

But it must not be supposed from this, that the children of Stemple, in Prussia, at the time of his death, could come here and claim a portion of this property. It is necessary that foreigners, claiming to take land by descent, should be resident here at the time of *the descent cast*. An estate rests in the heirs at law *immediately* on the *death* of the ancestor. It does not remain in abeyance; if it did, it might always so remain. They certainly cannot share the estate while they remain in Prussia; and can it be conjectured that they *may* become residents of Iowa, and upon that conjecture suspend the operation of the descent? We think the constitution means no such thing, but it merely places those foreigners who were in the State at the time of its adoption, and those who should afterwards come in as residents, upon the same equity. The right to inherit depends upon the existing state of allegiance at the time of the descent cast, and the capacity to take must then exist. *Orser* v. *Hoag*, 3 Hill., 79; *People* v. *Conklin*, 2 Hill., 67.

We are of the opinion that the court erred in deciding that the children in Prussia were entitled to notice.

Judgment reversed.

*Dissenting opinion by* GREENE, J. I cannot agree with the majority in this case. True, their opinion is authorized by the statutes and decisions of England and New York,

but I cannot consider it in harmony with the statute and liberal policy of Iowa.

To assume that because the legitimate child and heir of an intestate be born outside of certain geographical limits, he thereby forfeits all inheritable rights, which naturally, and in strict justice belonged to him, is without any foundation in reason, and an outrage upon the equality and rights of men. No doubt such a policy would be readily indorsed by the selfish dictates of crowned heads, to which the property would escheat; but surely it is alike repugnant to sound integrity, to the rights of persons, and to the enlightened sentiments of the age. It is inconsistent with the great truths and principles of right, upon which most of the common law is founded. It is one of the few remaining despotic features of that law which is repulsive to American institutions, and which should receive no countenance from American courts.

What foundation is there for the difference made, at common law, between inheritable and non-inheritable blood? Why this great disparity in the blood? Is there any reason for it in fact or in law? The law is said to be the perfection of reason. Reason is the soul of the law, and where the reason for a law ceases, so does the law itself. The reason for this prerogative of the crown ceased with our declaration of independence, and our republican forms of government. From that time the rights of all, both native and alien, were encouraged and protected by our more equal, just and catholic systems of law. Our constitution and laws are made for the *people*, whose persons or property may come within their supervision, and not for the citizen or resident only. The rights of property in a nonresident are distinctly recognized by our laws. The first article of our state constitution declares that, " all men— have certain unalienable rights—among which are those of *acquiring, possessing and protecting property*, and obtaining safety and *happiness*."

Stemple *v.* Herminghouser.

What dearer or more unalienable right has a parent than that of acquiring and protecting property for his offspring? What contributes more to his pursuit of happiness. Surely, under such a declaration of rights, so comprehensive and universal in its application, there can be neither reason, propriety, nor justice in thus excluding the non-resident child from the property acquired for him, by his resident father. In Iowa, at least, this relic of despotism and injustice should have no vitality as a principle of common law.

It is not only repugnant to the declaration of rights, but to my mind it is in direct conflict with the prevailing spirit, and also the express letter of the constitution. Art. 1, § 22, guarantees, that "foreigners who are or who may hereafter become residents of this State shall enjoy the same rights in respect to the possession, enjoyment and descent of property, as native born citizens." My learned brother well remarks: "Here is a material change upon common law in favor of the foreigner;" and speaks truly of the wise policy of our government to encourage the imigration of foreigners," &c., but I cannot indorse his conclusion, nor the construction which the majority place upon that section of our constitution. The opinion shows that C. W. Stemple, the father, was a resident of this State at the time of his death. Does it not follow then that he had the same rights in respect to the possession, enjoyment *and descent* of property *as a native born citizen.* The same rights and the same rules of descent are insured to this resident foreigner, as to the native born citizen. His estate is to descend in the same way, under the same laws and subject to the same distribution. If this section was limited to the possession and enjoyment of property, there would be more propriety in limiting its construction to the party, and act of inheriting. But the section goes much farther. It insures to the resident foreigner the same rights as to the transmission of his property, "the same rights in respect to the descent"— to his heirs as a

native born citizen. It not only insures possession and enjoyment to the resident, while living, but it also insures the same rights in respect to the descent of his property, when dead. These rights apply not only to the party who may inherit or possess the estate, but also to the party from whom the estate descends, and it makes the blood of that parent's child inheritable wherever that blood may be. As the blood of the fountain is made inheritable, that which flowed from it is equally so.

I object also to the construction given to the statute regulating descents. There is nothing equivocal in the language. It expressly declares that, "when *any person* shall die seized of any lands, &c., not having lawfully devised the same, they shall *descend* subject to *his* debts, in manner following: First, *In equal shares to his children*," &c. But we are told "this evidently means such children as have inheritable blood." Rev. Stat. 722, § 1. Where is the evidence for this strange meaning? Does the constitution or the letter or spirit of the statute indicate any other meaning than that which is expressed in such clear terms? If a child is born in Prussia, is he any less the child, the descendant of the parent than the son born in Iowa, or is the blood, or the rights of the one any less legitimate or inheritable than the other? To propose questions so self-evident is but to answer them.

But even under the construction placed upon the constitution and statute, by the majority, it must be admitted that those children residing in Prussia, had a conditional interest in the land. They might hereafter become residents of the state, Code 545, § 22, and thus remove the non-inheritable taint from their blood. They had then, at least, a contingent remainder in the land, and therefore they should have had their day in court. They were entitled to notice. With that notice they might have established their rights under the constitution and laws of the

State. I think, therefore, that the court below ruled cor-rectly, and that the decree should be affirmed.

*E. Johnsten,* for appellant.