The opinion of the Court was afterwards delivered by
Sedgwick, J.
This action is brought on two policies of reassurance, the one, dated 1st December, 1795, being on * “ brigantine Columbia and cargo, from Newbury ¡port to [ * 185 ] any or all the islands or ports in the West Indies, and from thence back to Newbwryport; ” the other, dated on the same day, “ on the schooner Harmony, appurtenances and cargo, at and from Lisbon to Newbwryport ”
*178 There are other facts which will hereafter be mentioned, for the consideration of questions which have been made in the argument of the case. At present, enough is stated to expose tó discussion the first and principal question in the case, viz., whether the contract itself, being a reassurance, is legal, and binding on the parties.
That a contract of reassurance is not prohibited by the principles of the common law, is admitted by the parties. It is a contract which, in itself, seems perfectly fair and reasonable, and might be productive of very beneficial consequences to those concerned in this important branch of commerce ; but, because it was much abused, and turned to pernicious purposes, it was prohibited by an act of the Parliament of Great Britain, (3) by which reassurance was rendered illegal in all cases except where the original assurer should become insolvent, a bankrupt, or die. And the only question is, whether that statute, as stick, is law within this commonwealth.
As an act of the British Parliament merely, it is not pretended that its binding force was extended to the colonies. But it is said, and, in my opinion, it is true, that, from the very nature of our relation as colonies to Great Britain, the parent state at the time the act was passed, it was competent to the Parliament to have extended this provision to the colonies, if it had seen fit to do it. But if that was the intention, it ought to appear by express words, or at least by inevitable implication. Blackstone, in his Commentaries, (4) while treating of the countries subject to the laws of England, speaking of these then colonies, lays it down without any restriction, that “ they were subject to the control of the Parliament, though (like Ireland, Man, and the rest,) not bound by any acts [ * 186 ] of Parliament, unless particularly * named.” If this be so, it is decisive in this case, as the colonies are not at all named in the act. And I think we may pretty safely conclude that that learned and elegant writer was well acquainted with the claims of Great Britain, in relation to her colonies, and that he had no disposition to narrow their effects. But, should we even go much farther, and admit that, although the colonies are not expressly named, yet if, from the whole purview of the statute, it manifestly appears to have been the intention of the legislature that reassurance should be prohibited in the colonies, that such ought to be the construction, yet I think that the case would be with the defendant in review; because I can discover no such intention.
There are no words in the section prohibiting contracts of reassurance, or in any other part of the act, which manifest, or even *179 imply, such an intention. By the most attentive consideration of the statute, I can nowhere perceive such an intention, but, on the contrary, I think it evident that no such intention existed. The observation of the counsel for the defendant in review is undoubtedly just, that part, of the provisions of the act were not intended to extend, and indeed could not extend, to the colonies. Now, it can hardly be believed that the Parliament could have intended that part only of that act should, by indefinite expression, be construed to extend to the colonies. If such had been the will of the legislature, it would have been declared, and not left a subject of uncertain or difficult construction.
There is another foundation, on which, it is said, a defence against this action may be bottomed. The constitution declares (5) that "All laws which have heretofore been adopted, used, and ap proved, in the colony, and usually practised on in the courts of law shall remain in force, until altered or repealed by the legislature.” It is true that many acts of the British Parliament have been adopted here, from causes which are now unknown. And it is said that wager policies, which are only rendered illegal by the same act, are here considered as invalid, and that this could result only from an adoption here, *in piactice, of that [ * 187 J act. In answer to this argument, I observe that., admitting wager policies are here illegal, I do not think the argument would be conclusive; for it is true that, at the time of the settlement of this country, and for some time afterwards, wager policies were, in' England, considered and held to be illegal at common law.
I now proceed to the consideration of other circumstances in the case. The reassurance on the Columbia is on the vessel and cargo to any or all the islands or ports in the West Indies, and from thence to Newburyport; and it is a reassurance by which the assurers are to respond the full amount of all losses, damages, and misfortunes, to which the assured might be liable, on a like sum written by him on a former policy; and, in the same proportion, on vessel and cargo. The reassurance then, in express terms, extends' only to a policy of insurance, and which was a policy of insurance on vessel and cargo. Instead of confining the reassurance to one policy of insurance, the defendant in review would extend it to three. One is admitted as properly described by the policy of reassurance, and here I think he must stop. The policy of reassurance is confined, in the terms of it, to a reassurance of a policy of insurance, and cannot be extended to three. Besides, the policies on “ effects ” and on “ property ” are confined to cargo, and are *180 not in proportion on vessel and cargo; they also describe difierenl voyages from that which the instrument declared on reassures. It would be infinitely too loose a construction of this contract, and altogether unsafe, in my opinion, that all these policies of insurance were comprehended in it, and reassured by it.
I am of opinion that the defendant in review has a right to recover the -130 dollars which he assumed as part of that which was originally subscribed by Hooper, because he was in fact, by agreement with all the parties at the time of the reassurance, an insurer for that sum, as much as for his own original subscription. My opinion as to this sum is founded solely on the evidence, which the case affords, that Prince had, before the reassurance, been received as a substitute for Hooper, to that amount; and [ *188 J that Hooper was, to the same amount, released *from his engagement: — in other words, that Prime was an insurer, and as such immediately responsible to the assured. This I consider as a case altogether distinct from Prime’s assuming the 100 dollars which had been underwritten by Bradbury. In this case, it is obvious that the agreement was not between Prince and the assured, but between Prince and Bradbury. The agreement does not, as is the case in the other instance, appear to have been subscribed by Prince, and it is certain the assured could have brought no action against Prince upon it. It could not therefore, in my opinion, be a reassurance to Prince of that sum, because Prince had never insured it.
But as to the 100 dollars assumed by Prince, which was originally subscribed by Bradbury, I have the misfortune to differ from both my brothers, who think that it is impossible to distinguish this from the 130 dollars which was originally subscribed by Hooper, and afterwards assumed by Prince. They think that his assent, as expressed in the broker’s memorandum, in the one case, constituted Prince as much an insurer as his own subscription in the other.
By a computation, it will appear that the whole reassurance on the Columbia will be completely covered by the subscriptions Previous to that of the plaintiff in review.

 19 G. 2, c. 37, § 4.

 Vol. i. pp. 107, 108

 Chap. 6, art. 6.