NEW-YORK,
Nov. 1810.

JACKSON
v.
JACKSON.

JACKSON, *ex dem.* ELMENDORF and others, *against*
JACKSON and others.

Where there is a failure of inheritable blood, by reason of *alienism*, the lands do not *escheat*, but go to the next heir. *L.* a native of *New-York* was seised of lands in 1749. He afterwards went to *St. Thomas*, a *Danish* island, married a *Danish* subject, by whom he had two daughters, and died in 1750; one of the daughters died, without issue, & before coming of age; the other daughter married a *Danish* subject, and died in 1774, leaving an infant daughter who died in 1775. It was held, that the two daughters were natural born subjects of *Great Britain* within the stat. of 3 *Geo.* II. c. 21. but that the granddaughter was an *alien;* and that the lands of *L.* did not *escheat*, by reason of the *alienism* of the granddaughter; but that the issue of the elder brother of *L.* would inherit, as the next heir at law.

THIS was an action of *ejectment*, for land in the Hardenbergh patent, in the county of *Ulster.*

A patent was issued the 23d *April*, 1708, to *Johannis Hardenbergh* and others. *Leonard Lewis*, one of the patentees, died seised of one equal and undivided *eighth* part of the lands patented, in 1720, having by his will, dated the 27th *February*, 1723, devised the premises to his wife, for life, with remainder in fee to his eleven children named in the will. The eldest son was named *Thomas*, and another was named *Leonard.* On the 4th *May*, 1742, the widow released to her children all her interest in the estate of her husband. On the 15th *November*, 1749, a partition was made of the Hardenbergh patent, and the proprietors of the other *seven* parts, released to the children of *Leonard Lewis*, deceased, certain lots, equal to one *eighth* of the whole. On the 17th *November*, 1749, a subdivision was made among the eleven devisees of *Lewis*, by which the premises in question became the separate estate of the testator's son *Leonard*. These partitions were confirmed by an act of the legislature, passed the 29th *March*, 1790.

*Leonard*, the son of the patentee, was born in the county of *Duchess*, and went to reside in *St. Johns*, in the island of *St. Thomas*, a *Danish* island, where he married a *Danish* subject, by whom he had issue two daughters, named *Gersie Maria*, and *Anne Elizabeth.* He died there, in the autumn of the year 1750. *Gersie Maria* married a *Danish* subject, but died in 1767, without issue, and before she was of a full age. *Anne Elizabeth* married *Hans Petrie Bey*, a *Danish* subject, of *St. Thomas*, by whom she had a daughter, born in

1773 or 1774. She died in 1774, soon after the birth of her daughter, who also died in 1774 or 1775.

Thomas, the heir at law of the patentee, died in 1766, and his eldest son died in his life-time, leaving a son named Thomas, who, on the 9th March, 1789, made a will, and died in August, 1789, leaving five children, lessors of the plaintiff. His executors, on the 9th May, 1792, as acting under a power contained in the will, conveyed, by deed, the premises in question to Lucas Elmendorf, one of the lessors.

It was admitted, that the premises are part of a large tract of wild and uncultivated land, and that the defendants have recently taken possession.

The defendants contended, that by the death of Anne Elizabeth, daughter of Leonard, in 1774, the estate escheated.

The case was submitted to the court, without argument.

KENT, Ch. J. delivered the opinion of the court. The lessors of the plaintiff claim title under Thomas Lewis, on the ground that the inheritable blood in the line of lineal descent of Leonard Lewis, a younger brother of Thomas, and who died seised of the premises, failed, because his granddaughter was an alien. Leonard Lewis the younger was seised of the premises in 1749, and before he went to the West Indies. He married a Danish subject in the island of St. Thomas, and died there, leaving no issue but two daughters, one of whom died without issue, and the survivor who was born in St. Thomas, married an alien, and died, leaving a daughter, an infant and alien, and who died also without issue. The two daughters were natural born subjects within the statute of 3 Geo. II. c. 21. because their father was a subject, but the granddaughter was clearly an alien.

If the land did not escheat in consequence of the

alienism of the infant heir, but went to the next collateral heir who was not an alien, then it is certain that the land went to *Thomas Lewis* and his representatives, he being the elder brother of *Leonard*, whose inheritable blood had thus failed.

The only question in this case, then, is, whether *Thomas* or his issue could inherit, when the lineal descendant of his younger brother was an *alien*, and so could not inherit. There is a *dictum* of *Newton*, J. in 22 *Hen.* VI. 38. pl. 5. that he could not, and that *dictum* appears to have been acquiesced in by the counsel. The instance given by *Newton* to illustrate his position is correct, but the application fails. He says, that if one be attainted of felony in the life-time of his father, and survives his father, the land shall escheat, notwithstanding the father left other issue or a brother living. The same doctrine is advanced in a number of later authorities. (*Co. Litt.* 163. b. *Hob.* 334. *Cro. Car.* 435. *Dyer*, 48. a. *Hawk.* b. 2. c. 49. s. 50.) But there is a distinction between the failure of inheritable blood, by reason of alienism, and by means of attainder; and the next heir will take in the first instance, but not in the other. This distinction is to be found in *Coke;* (*Co. Litt.* 8. a.) but it is stated in the clearest manner, in the treatise on the *Law of Forfeiture*, ascribed to the son of Lord *Hardwicke.*(a) He says, (p. 72.) that by the ancient common law of *England*, " where a man was not capable of civil rights by nature, as an alien born, and never naturalized, being unknown to the law, he was excluded from inheriting; and the next of kin within the allegiance, who did not claim under him, was admitted; or where he had incurred civil disabilities, by his own voluntary act, not criminal, as one who entered into religion, or abjured the realm, he was taken to have undergone a civil death, and the next in course of descent entered. But where he is attainted of treason or felony, the law will not pass him over, and marks him out *in rei exemplum et infamiam*,

(a) The honourable *Charles Yorke.*

Hence it is, that though he was never in possession, nor those who claim under him more capable of inheriting than he, by reason of the consequential disability arising from the attainder of the ancestor, yet the estate will be interrupted in its course to the collateral and escheat." Though this rule is well established in the case of attainder for crimes, yet even there it is condemned by *Craig*, in his *Law of Feuds*, who says, that the estate ought to go to the next collateral branch, instead of escheating, since it is not necessary for the collateral to make title through the criminal, but he may have his descent from an innocent and common ancestor. Lord Ch. *Yorke*, however, ably vindicates the *escheat*, in the case of attainder, on the ground of public polity. We have, at present, nothing to do with this question; and it is sufficient to say, that the doctrine of *escheat* does not apply to the present case; and judgment ought to be rendered for the plaintiff.　　Judgment for the plaintiff.