Bartlett & Waring *vs.* Morris.

BARTLETT & WARING *VS.* MORRIS.

1. Where a law is plain and unambiguous, whether expressed in general or limited terms, there is no room left for construction, and a resort to extrinsic facts is not permitted, to ascertain its meaning.

2. The title of a statute may exp'ain what is doubtful, but it cannot control what is contained in the body of the act.

3. The ru'es of interpretation which apply to private statutes, do not differ from those applicable to public a..d general statutes.

Error to the Circuit court of Mobile.

Ejectment, tried before *Pickens*, J. Verdict and judgment for plaintiff.

This case was brought up by bill of exceptions, to the charge of the presid'ng judge, the insertion of which is here deemed unnecessary, as the material point raised, sufficiently appears in the statement contained in the subjoined opinion.

*Stewart*, for plaintiffs in error.
*Salle*, contra.

GOLDTHWAITE, J.—At the trial of this case, in the Circuit court, the lessor of the plaintiff claimed title to the land in controversy, under the provisions of an act of an act of the general assembly of this State, which is in these words:

"An act for the benefit of Elizabeth Morris.

"Sec. 1. Be it enacted, by the Senate and House of

Representatives of the State of Alabama, in general assembly convened, That Elizabeth Morris, an alien of Mobile county, be, and she is hereby, authorised to inherit, and have and hold, such of the estates of her late uncle James D. Wilson, as she might have inherited by law, had she not been an alien; and that the same shall not escheat to the State.—Approved 9th January, 1836."

It was shewn in evidence, that Wilson was an alien, and and that he died seized and possessed of the land. The lessor of the plaintiff was also an alien, as was her father and mother,—the latter being the sister of Wilson. The Circuit court instructed the jury. that although Wilson was an alien, and the lessor of the plaintiff was also an alien, yet, that by virtue of the recited act, such alienage did not preclude her f. om recovering the land sued for. If an error was committed by giving this instruction to the jury, it will be unnecessary to examine the other questions presented on the record, because their determination in favor of the lessor of the plaintiff will not aid her, as her title depends solely on the act.

Some difference of opinion has been expressed by counsel, as to the rules of construction, applicable to statutes of this description,—the defendant insisting, that when they operate as grants, they ought to be strictly construed, and that nothing can be taken under them by intendment or implication;—the adverse party contending, that they should be expounded with the utmost liberality, so as to completely effect the beneficial object contemplated. We, however, are not aware of any rules defined by the law for the interpretation of private statutes, other than, or different from those, which are useful to ascertain the

meaning and intention of such as are public and general. Whether the act before us, requires the aid of construction, must depend on its meaning and intention being doubtful or obscure.

If circumstances might exist, under which every word of this act can have an effectual operation, then it is certain, that there is nothing doubtful or obscure in its terms, and the general assembly must be presumed to have contemplated the existence of such circumstances, before the act can take effect. No principle is more firmly established, or rests on more secure foundations, than the rule which declares, when a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature shall be intended to mean what they have plainly expressed, and consequently no room is left for construction—(U. States vs. Fisher, 2 Cranch, 358; Faw vs. Marsteller, 2 Cranch, 10; Paulina's Cargo vs. U. States, 7 Cranch, 52.)

If Wilson, when he died was a citizen, possessed of inheritable estates; if the lessor of the plaintiff was the alien daughter of a citizen mother, and the latter be a sister of Wilson, born since eighteen hundred and two, and whom he had survived; and there being no remote heirs to him, on whom the law cast the descent : then every word of this act would have effect. It would be for the *benefit* of Elizabeth Morris; by it, she would be authorised to inherit, and have and hold, such of the estates of her deceased uncle, as she might have inherited by law, had she not been an alien : and the same would not then escheat to the State—(2 Kent's Com. 45.) This is given as an illustration of one case only, but it is supposed

others exist in which every word of this statute could have effect.

All the doubt thrown around this case, arises from the facts disclosed at the trial, and not from any uncertainty of the statute. The lessor of the plaintiff, unable to bring herself within the conditions required by the act, claims to have it construed to suit the circumstances shown, and give her the estate : this cannot be : resort is not permitted to extrinsic facts, to ascertain the meaning of a statute otherwise clear ; for if so, the same words, under variant circumstances, might receive different constructions; and what would be law, when applied to one individual, might cease to be so, when applied to another.

If it is admitted, that the statute is uncertain and ambiguous, the construction contended for by the lessor of the plaintiff cannot be supported. The whole force of the argument rests on the assumption, that as the act is entitled for her benefit, it should receive such an exposition, as will advance her interest. In aid of this, it is insisted that the concluding words of the act can have no effect under the circumstances disclosed, unless the estate is given to her, as it will otherwise remain as a *waif*, to be seized by the first lord of the soil who chooses to assert his dominion over the derelict domain. The terms used by the act, import an intention to confer a benefit, in one event only ; if the lessor of the plaintiff would have been entitled to the land, if born a citizen, or not an alien, then the State permits her to take it, notwithstanding her alienage : it is nothing more than a removal of the defect, or want of inheritable blood :

Bartlett & Waring *vs.* Morris.

and it does not qualify either Wilson or her immediate ancestor to transmit an inheritable estate: it does not constitute her an heir, or authorise her to have any estate which she could not have inherited, if born a citizen: it places her in the same situation, and none other, than she would be in, if a citizen. In this view of the case, as the right of the State was only inchoate, if Wilson died without heirs capable of inheriting his estate, and as it required an inquisition of office in such a case, to make it complete and perfect, the statute very properly says the same shall not escheat. If the construction contended for is given to the act, it causes the general assembly to enact, that lands, which for years have belonged to the State, shall not escheat, as they were vested in it absolutely and without office found, (if the common law prevails,) on the death of Wilson, if he was then an alien.

Nothing, then, remains to support the pretensions of the lessor of the plaintiff, save the title of the act, and this has by no means the controlling influence which is claimed for it. In England, the title of a statute is not to be regarded in construing it, because it is no part of the statute—(Ld. Raymond, 77.) In this country, it has been held, when a statute is ambiguous, and its intention is to be ascertained by construction, its title claims a degree of notice, and should receive its due share of consideration—(U. States vs. Fisher et al. 2 Cranch, 358.) So, also, the title cannot control the words of an act, although it may furnish some aid in showing what was the mind of the legislature—(United States vs. Palmer, 3 Wheaton, 610.) The utmost, then, that the title of a statute can do, is to explain what is doubtful, but it cannot control that which is contained in the body of the act.

Bartlett & Waring *vs.* Morris.

A very similar question to the one here presented, was determined in the case of McCreery vs. Sommerville, 9 Wheat. 354.) The statute of 11 & 12 William III, ch. 6, is in force in Maryland. It provides that any natural born subject may make his pedigree through an alien ancestor, as fully and effectually as if such alien ancestor was a natural born subject. Three nieces claimed an estate in Maryland, under this statute, as the heirs of a deceased uncle, who in his life time was a citizen : their father, through whom they made pedigree, was living, and was an alien. The court held the nieces were not entitled to inherit : its judgment is founded on the ground, that the statute, by its terms, was intended solely to remove a disability, and not to invest the subject with the capacity to inherit, in cases not previously permitted by the law.

It is conceded, (which, indeed, could not be properly controverted,) that Wilson could transmit no estate by descent, even to a citizen.

Our conclusion, then, is, that the act recited did not cause a transmission of the title held by Wilson, at his death, to the land in controversy, to the lessor of the plaintiff; and the judgment of the Circuit court is reversed, and, if desired, the cause will be remanded.