SIMINGTON *v.* THE STATE.

Where the words of different acts, or of particular sections of such acts, are susceptible of a construction which would carry out the spirit of the law, and both be permitted to stand, the rules of construction may profitably be employed; but where the language is so repugnant as necessarily to destroy the meaning of one of the provisions, that which is last enacted must prevail.

The rules for the construction of conflicting statutes are only applicable where the meaning of the language creating the repugnance is obscure, doubtful or nonsensical.

The act establishing Courts of Common Pleas, and defining their jurisdiction, was approved *May* 14, 1852, and authorized said Courts to try persons accused of felonies, in cases not punishable with death, 1. Where the party was in custody at the time; and 2. Where a party charged with a felony, before indictment found, voluntarily submitted to the jurisdiction of said Courts. The trial might be had on information, without indictment. By the fifth section of the act providing for the organization of Circuit Courts, &c., approved *June* 1, 1852, (at the same session of the legislature), it was enacted that such Circuit Courts should have "original, exclusive jurisdiction of all felonies." *Held,* that the latter act divested the Courts of Common Pleas of their jurisdiction, in any case, over felonies.

Section 19, 2 R. S., p. 363, approved *June* 17, 1852, is as follows: "Informations are filed by the prosecuting attorney upon affidavit, in any Court having jurisdiction of the offence. Criminal actions prosecuted by information, include all offences *not within the jurisdiction* of the grand jury." Felonies, by c. 4, s. 14, p. 388, 2 R. S. 1852, were within the jurisdiction of the grand jury; and all laws in conflict with that chapter were repealed. The oath prescribed for the grand jury by the act approved *June* 18, 1852, (2 R. S. p. 356) is, diligently to inquire into and true presentment make of all felonies committed or triable within the county. *Held,* that these enactments support the exclusive jurisdiction of the Circuit Courts over felonies.

APPEAL from the *Henry* Court of Common Pleas.

HOVEY, J.—At the *January* term, 1854, of the Court of Common Pleas of *Henry* county, *Simington* was arraigned to answer a charge of forgery upon an information filed by the district attorney. A motion to dismiss the cause for the want of jurisdiction was overruled. Trial by jury. Verdict of guilty. Motion in arrest of judgment overruled, and judgment pronounced upon the verdict. *Simington* appealed to this Court.

The question involved in this case is the same as that presented in the case of *Spencer* v. *The State* (1), decided at the last term of this Court. Have the Courts of Common Pleas jurisdiction in cases of felonies?

The able and elaborate manner in which that case was presented in the opinion of the Court, and the dissenting opinion, obviates the necessity of a lengthy opinion in this. But as it is a well-known fact that the Court, before my appointment, was equally divided on this question, and as I took no part in that opinion, it is thought advisable that we should again examine the principles upon which that case was decided.

The act establishing Courts of Common Pleas, &c., approved *May* 14, 1852, authorizes such Courts to try persons accused of felonies in cases not punished with death, 1. Where the party is in custody at the time, and 2. Where a party charged with a felony, before indictment found, voluntarily submits to the jurisdiction of such Courts. The trial may be had on information, without indictment. 2 R. S., p. 19.

By the 5th section of the "act providing for the organization of Circuit Courts, the election of judges thereof, and defining their powers and duties, approved *June* 1, 1852," it is provided, that such Circuit Courts, shall have "original, exclusive jurisdiction of all felonies." 2 R. S., p. 6.

The apparent repugnance between these acts presents the question for adjudication.

Does the act of *June* 1 repeal that of *May* 14, or can they be so construed as to leave the jurisdiction of the Courts of Common Pleas unimpaired?

The rules in regard to the construction of statutes are plain and universally acknowledged; and the only difficulty arises upon their application to the particular enactments. Courts, fully recognizing these rules, have applied them differently; and it would be useless, and perhaps impossible, to reconcile all the cases upon the doctrine of construction.

There is probably no portion of the law more abounding in *dicta*. Numerous cases could be cited where the most important principles announced by the Court had nothing to do with the facts, and, hence, seeming authorities can be easily found to support either side of a question

of construction. And yet, we apprehend that but few cases have been incorrectly decided, however erroneous the *dicta;* the facts generally justifying the conclusions of the Courts.

By a careful examination of the authorities, it will be found, that in most of the cases where Courts have reconciled what they call repugnancies, there is no direct and necessary conflict in the phraseology of the statutes. Although some of the older cases, in the *English* reports, seem to indicate a latitudinary course of construction, the current of authorities, for the last fifty or sixty years, has been in favor of abiding by the last expressed will of the legislature. The most experienced and learned judges have lamented the departure from the plain and obvious meaning of the words of the act, and deemed it much safer to adhere to the words of the statute, construed in their ordinary import, than to enter into any inquiry as to the supposed intention of the parties who framed the act. *Rex* v. *The Inhabitants of Great Bentley,* 10 B. & C. 527.

In connection with this subject, *Dwarris* says, "they (Courts) are not to presume the intention of the legislature, but to collect it from the words of the act, and they have nothing to do with the policy of the law. This is the true sense in which it is so often impressively repeated, that judges are not to be encouraged to direct their conduct 'by the crooked cord of discretion, but by the golden metewand of the law,' that is, not to construe statutes by equity, but to collect the sense of the legislature by a sound interpretation of its language, according to reason and grammatical correctness." 2 Dwarr. on Stat. 703.

Where the words in the different sections or acts are susceptible of a construction which would carry out the spirit of the law, and both be permitted to stand, the rules of construction may be profitably used; but where the language is so repugnant as necessarily to destroy the meaning of one of the provisions, that which is last enacted must prevail.

In the case of *Rex* v. *Ramsgate,* 6 B. & C. 712, it is said, that where the legislature has used words of plain and definite import, it would be dangerous to put upon them

Nov. Term, 1854.

SIMINGTON
v.
THE STATE.

a construction which would amount to a holding that the legislature did not mean what it has expressed. The correct course, in all cases, where the intention of the legislature is called in question, is to adhere to the words of the statute, construing them according to their nature and import, in the order in which they stand in the act.

The 22 and 23 Car. 2, ch. 25, and other game laws, were construed by the Court, in the case of *Jones* v. *Smart*, 1 T. R. 44; and it was held, that esquires, and other persons of higher degree, were not qualified under that act, although the son of such esquire, or other person of higher degree, was. *Ashhurst*, J., in different parts of his opinion, says: "I can not think it was their intention to exclude the father, but in fact they have done it;  *  *  *  *  *  * the blunder, has perhaps been adopted without meaning it;  *  *  *  *  *  * it is safer to adopt what they have actually said, than to suppose what they meant to say."

In the case of *Rex* v. *Barkar*, lord *Tenterden* said, "Our decision may perhaps operate to defeat the object of the statute, but it is better to abide by this consequence than to put it upon a construction not warranted by the words of the act, in order to give effect to what we may suppose to be the intention of the legislature." 8 B. and C. 104.

And in another case, in the same volume of reports, *Noty* v. *Buck*, 164, it is said, "the words may probably go beyond the intention; but if they do, it rests with the legislature to make an alteration; the duty of the Court, is only to construe, and give effect to the provision." See, also, *Rex* v. *Turrey*, 2 B. & A. 522.—*Rex* v. *Bray*, 3 M. & S. 20.—*Banding* v. *Barrington*, 6 B. & C. 475.—2 Dwarris on Statutes 711.—*King* v. *Skone*, 6 East 518.—*Rex* v. *Stoke.Damerel*, 7 B. & C. 569.

In conformity with the rule, as above stated, the following cases have been decided by this Court: *Ham* v. *The State*, 7 Blackf. 314, *McQuilkin* v. *Doe* d. *Stoddard*, 8 *id.* 581, *State* v. *Miskimmons*, 2 Ind. 440.

The rule, in the foregoing cases, has the advantage of being more certain in practice than those which seek the intention of the legislature from an examination of former

enactments.    By this, the law can be easily ascertained, as the last clearly-expressed section must prevail over all older conflicting ones; while, on the contrary, able and learned jurists may widely differ as to the meaning and spirit of an act, and thus render it doubtful and uncertain, until settled by the Courts of last resort.

In *Spencer* v. *The State*, the following rules are adverted to as being applicable to this question.

" Courts are reluctant to declare statutes repugnant, unless they are clearly so."

" All parts of a statute, and different statutes *in pari materia*, and the whole system of legislation on the subject-matter, are to be considered with reference to the intention of the legislature in enacting the law."

" Repeals by implication are not favored by Courts."

" Laws should be so construed, as to prevent the failure of justice."

These rules, taken in the abstract, are undoubtedly correct, and the question that arises is, whether the repugnancy in this case is of such a kind as to authorize their application.

Will all repugnant acts admit of construction?    We are clearly of opinion that they will not.

Suppose an act regulating the time of holding Courts in *Marion* county, should, by the first section, fix the time of holding the *Spring* term, on the first *Monday* in *May*, and, by the second section, on the first *Monday* in *June?* There could be but one opinion, as to which of these sections would control.    The above rules of construction, in such a case, could have no applicability, and the last section would necessarily repeal the former.

These rules can not be applied where the language creating the repugnance is clear, sensible, and unequivocal; they can only be used, where the meaning is obscure, doubtful, or nonsensical.    In *Holbrook* v. *Holbrook*, 1 *Pick.* 250, *Wilde*, J., says, "where the words of a statute are clear and unequivocal, the rules for construction in doubtful cases, are not applicable."    So in *Bartlett* v. *Morris*, 9

Porter 266, it is said, "where a law is plain and unambiguous, whether expressed in general or limited terms, there is no room left for construction; and a resort to extrinsic facts, is not permitted to explain the meaning."

And in *Pitman* v. *Flint,* it is said, "a mere failure of justice would not be sufficient ground for construing statutes against their clear meaning, so as to give a Court jurisdiction." 10 Pick. 505. See *The United States* v. *Fisher,* 2 Cranch 358, *Paulina's Cargo* v. *The United States,* 7 *id.* 52, *Few* v. *Marsteller,* 2 *id.* 10.

What is the character of the section which gives rise to the repugnancy in this case? The language of the section is, " such Circuit Courts, in their respective counties, shall have original, exclusive jurisdiction in all felonies." It would be difficult to select words more clear, definite, and comprehensive than these, for the purpose of vesting in such Courts the entire jurisdiction of such offences.

Had the words "exclusive jurisdiction of felonies," alone been used, there would be but little room to doubt that the intention was to confer upon the Circuit Courts the sole right to try felonies; but for the purpose, if possible, of placing the meaning beyond doubt, the word "all" is inserted before felonies. The section itself is clear, plain, and unambiguous, and the only remaining question is, is there any other subsequently enacted part of the revised statutes which tends to change its signification?

We have carefully searched for other provisions which might aid us in solving the question of jurisdiction, and have only been able to find two sections which throw any light on the subject.

Section 19, 2 R. S., p. 363, approved *June* 17, 1852, is as follows:

" Informations are filed by the prosecuting attorney, upon affidavit, in any Court having jurisdiction of the offence. Criminal actions prosecuted by information, include all offences *not within the jurisdiction of the grand jury,* or the exclusive jurisdiction of justices of the peace."

What offences are within the jurisdiction of the grand jury? Felonies only. 2 R. S., c. 4, s. 14, p. 388. And by

section 16, *id.*, all laws in conflict with chapter 4, are repealed. We think it clear, from these sections, that the only kind of offences which can be prosecuted by *information*, are those below the grade of felonies.

The form of the oath prescribed for the grand jury, is the other provision, we have above alluded to, which we think also favors this view. That oath is not now as formerly, "to inquire into such matters and things as shall be given them in charge," &c., but they "are diligently to inquire into, and true presentment make, of all felonies committed or triable within the county." 2 R. S. p. 356. Approved *June* 18, 1852.

The duty thus imposed upon the grand jury of investigating and presenting *all felonies*, would seem to place the matter beyond doubt; for why require them to investigate and present cases which may have been tried and disposed of in the Court of Common Pleas? Under this oath the grand jury could not excuse themselves for not indicting persons guilty of felonies, although they may have been tried in the Common Pleas by information.

We are therefore of opinion, that the section conferring exclusive jurisdiction on the Circuit Courts, is too plain and unambiguous to admit of construction; and that the other parts of the statutes which were subsequently enacted, instead of militating against such exclusive jurisdiction, uphold and support it.

STUART, J., dissented.

*Per Curiam.* — The judgment is reversed. Cause remanded, &c.

*J. T. Elliott, J. H. Mellett,* and *D. Nation,* for the appellant.

*E. B. Martindale,* for the state.

(1) Ante, p. 41.