## McLEAN and wife *against* SWANTON.

The statute (1 *R. S.*, 754, § 22) which provides that no person capable of inheriting real estate shall be precluded from such inheritance by reason of the alienism of any ancestor of such person, enables those only to inherit who would be entitled to the estate by the ordinary law of descent on the death of the person last seized, but for the alienism of some person through whom title is deduced.

It does not enable a person to take an estate by inheritance who deduces title by descent through a living alien relative of the deceased, who would himself inherit the estate were he a citizen.[1]

Accordingly, where the decedent left him surviving a sister, and a niece, her daughter, the former an alien and the latter a citizen; *Held*, that the niece did not take his real estate by inheritance.

APPEAL from a judgment of the superior court of the city of New-York. The action was brought to recover the possession of a lot of land in that city. The jury found a special verdict, from which it appeared that Robert Swanton, a citizen of the United States, died seized of the premises in the year 1840, having by his last will and testament devised them to Thomas Roycraft in fee, with a contingent limitation, to the effect that if Roycraft should die without issue, then the premises should go to four persons named, in certain shares. Roycraft died without issue, in 1846. The four executory devisees were all non-resident aliens. The verdict set forth that the plaintiff, Mary McLean, and her sister, were the nearest descendants and relatives of the testator who were citizens of the United States at the time of his death, and that their mother Catharine Hayes, through whom the plaintiff, Mary McLean, deduces title by inheritance to the premises, was living at the time of the testator's death, and at the time of the trial, and that she was and continues to be an alien, and that the defendant was in the possession of the premises. The

---

[1] *Luhrs* v. *Eimer*, 80 N. Y. 171. *Larreau* v. *Davignon*, 1 Sheld. 128.

superior court gave judgment in favor of the defendant, and the plaintiffs appealed.

*C. P. Kirkland*, for the appellants.

*W. M. Evarts*, for the respondent.

DENIO, C. J.   Thomas Roycraft having died without issue, and the conditional limitation in favor of the four alien devisees having failed to take effect on account of their alienage, it is agreed that the land has descended to the heirs of Robert Swanton, if he left heirs, as in the case of intestacy.   At the common law, the plaintiff, Mary, would have had two distinct obstacles to encounter in making title to the premises as heir of Robert Swanton.   First. Her mother being alive, she, and not the plaintiff, would have been the nearest heir of the person last seized; and Secondly, her mother being in the line of descent from Robert Swanton to herself, and being an alien, and consequently without heritable blood, a title by descent could not be deduced through her. ( *Collinwood* v. *Pace*, 1 *Vent.*, 413; 2 *Kent's Com.*, 54, *and cases cited in note c.*)   The last mentioned difficulty is obviated by a provision in the chapter of the Revised Statutes relating to the title to real property by descent.  (1 *R. S.*, 754, § 22.)   It declares that no person capable of inheriting under the provisions of that chapter shall be precluded from such inheritance by reason of the alienism of any ancestor of such person.   If, therefore, the plaintiff were otherwise capable of inheriting the estate of which Robert Swanton died seized, the circumstance that she must convey her pedigree through an alien would no longer prejudice her.   But to avail herself of the benefit of the statute, she must, at the time of the death of the person last seized, have been capable of inheriting the premises from him; for, unless she was his heir, the statute has no application to her case.   There is nothing in the

section referred to which professes to change any of the rules of descent or to make one an heir who would not be such by the general law of inheritance.   Its object is simply to abrogate a very artificial principle, based upon reasons long since obsolete, by which it was held that where the descent, whether lineal or collateral, was mediate, the kindred through whom the claimant made title as heir, called by Sir Mathew Hale the *medii anticessores*, must be either natural born or naturalized subjects.   Thus, in lineal descents, if a father be an alien, and hath issue a natural born subject, and dies in the life of the grandfather of the latter, and the grandfather dies seized, the son shall not take, but the land shall escheat.   And so in collateral descents: If there be A. and B., brothers, and A. is an alien, and hath issue C., a denizen, and dies, and B. purchases land and dies without issue, C. shall not inherit; for A. was incapable of transmitting the inheritance.   These examples, taken from the opinion of Sir Mathew Hale, in the case of *Collingwood* **v.** *Pace*, before referred to, sufficiently illustrate the rule which it was the object of the statute to abrogate.   The parties who are relieved by the statute are those who would have inherited but for the principle of the common law which I have mentioned.   It is quite obvious that the statute does not introduce a new canon of descent.   It simply removes an impediment to the free operation of the existing law regulating successions to real estate.

    The argument of the plaintiffs' counsel, to avoid this view of the subject, was, in effect, that the existence of the plaintiff's mother might be disregarded, upon a doctrine thus expressed by Chancellor Kent: " If a citizen dies, and his next heir be an alien, who cannot take, the alien cannot interrupt the descent to others, and the inheritance descends to the next of kin who is competent to take, in like manner as if no such alien had ever existed." ( 2 *Kent's Com.*, 56.)   Therefore, it is argued that the plaintiff may well be the heir of Robert Swanton, and capable of inherit-

ing in the lifetime of her mother, who, being an alien, cannot interrupt the course of descent. The difficulty of this position is, that if the name of the mother be stricken from the plaintiff's genealogical chart, it will not appear that she has any connection with Robert Swanton, whose heir she claims to be. The cases to which the doctrine referred to in the Commentaries applies are those in which the claimant does not make title through the alien, but where she can deduce her pedigree from the person dying seized, by leaving out or passing by the alien. Thus, in the case put in *Co. Litt.* (8, *a.*): If a man has issue two sons, and the elder is an alien and the younger not, the younger may inherit from his father. So, if the elder brother had a son a natural born subject, he could not inherit, but the inheritance would still go to the younger brother. This last proposition is one of the points decided in *Collingwood* v. *Pace.* There were three brothers, Nicholas, John and George, all originally aliens, and the sons of an alien father. John and George were naturalized by act of parliament, with words enabling them to inherit to any ancestor, lineal or collateral. Nicholas and George both had children born in England. John purchased the estate in controversy, and died without issue. The issue of George, the younger brother, was the lessor of the plaintiff, and the defendant claimed under the issue of Nicholas, the elder of the three brothers. The issue of Nicholas was passed by, because his father was an alien, and the issue of George held to have inherited the estate, his father having been naturalized. Upon the argument of the plaintiff's counsel in the present case, Nicholas being the elder brother, and the heir of John but for his alienage, could have been passed over as though he had never existed, and his issue, instead of the issue of the younger brother, would have taken the estate. All the cases decided in this country, where an alien would have taken the estate but for his alienage, and in which a more remote heir was preferred were cases of the same character, the successful

claimant making out his descent independent of and not through the alien. ( *Orr* v. *Hodgson*, 4 *Wheat*, 453 ; *Lessee of Levy* v. *McCartee*, 6 *Pet.*, 102 ; *Jackson* v. *Lun*, 3 *John. Ca.*, 109 ; *Jackson* v. *Jackson*, 7 *John.*, 214 ; *Orser* v. *Hoag*, 3 *Hill*, 79 ; *Jackson* v. *Green*, 7 *Wend.*, 333.) Upon the plaintiff's theory, the statute under consideration would have been quite unnecessary ; for if she can be allowed to strike out her alien ancestors, intervening between the person dying seized and herself, whether living or dead, and make title to the land of the person so dying seized, as his immediate heir, the defect of heritable blood in such ancestors would be a matter of no moment. Independently, therefore, of direct authority, we are of opinion that the plaintiff is not aided by the statute referred to. It does not improve the situation of a person who, aside from all questions as to alienage, would not have been the heir ; and the plaintiff cannot be the heir of Robert Swanton during the life of her mother.

But if we were less confident of the soundness of these views than we are, we should find ourselves led to the same conclusion by authority. The precise question involved in this case arose in *McCreery* v. *Somerville* (9 *Wheat.*, 354), and was carefully examined by Mr. Justice Story, and decided against the plaintiff's position. It was suggested by the plaintiffs' counsel, in the argument before us, that there was a material difference between the language of the act of 11th and 12th William III., *ch.* 6, which prevailed in Maryland, and governed the case of *McCreery* v. *Somerville*, and our statute. Upon carefully comparing the two enactments, we are unable to see any distinction which can affect this question, or indeed any substantial difference whatever. The New-York statute contains the whole principle of the English, stripped of the redundant phraseology in which acts of parliament were in that day clothed. For instance, our statute uses the words, " person capable of inheriting," while the English legislature, with greater

amplitude of language, described the same class of persons as any " who shall or may lawfully inherit, or be inheritable as heir or heirs, and make their pedigrees and title by · descent from any of their ancestors, lineal or collateral." The sense is certainly the same under both forms of expression, and it is impossible, I think, to state any difference between them. In this state, the same question arose under our statute, and was decided in the same way in the late supreme court. ( *The People* v. *Irvin*, 21 *Wend.*, 128.) The question was not much elaborated in the opinion of the court, but the decision is a direct authority upon the point. Again, in this court, in *McCarthy* v. *Marsh* ( 1 *Seld.*, 263 ), the plaintiff, who was a relative in the fourth degree of the person dying seized, was allowed to recover, though the case disclosed that the intestate had grand nephews and nieces who were citizens of the United States, and who would have been entitled to the inheritance but for the fact that their mother, the niece of the intestate, was living and an alien. The point we are considering was not discussed at the bar or by the court, but the fact which, upon the position of the present plaintiff, would have been fatal to the judgment which was affirmed, was patent upon the face of the case, and could scarcely have escaped the attention of the counsel or the judges, if the position had been regarded as tenable. The construction which we adopt was spoken of with approbation by Chief Justice Savage, in *Jackson* v. *Green*, above referred to, and is laid down in Kent's Commentaries as the true rule. ( 2 *vol.*, 53, 5*th ed.*)

The judgment of the supreme court should be affirmed.

MITCHELL, J. Robert Swanton made his will and codicil in 1835, and by it devised certain lands to T. Roycraft and his heirs forever ; by a codicil, made in 1840, he directed that if Roycraft should die without issue, the property should pass to five other persons in certain proportions. Swanton died in 1840, and Roycraft died in 1846, without

leaving any issue surviving him. The five persons to whom, in this event, the estate was to pass, were, at the time of the death of Roycraft, and still are all aliens, resident in Ireland. Mary McLean, one of the plaintiffs, and her sister, are the nearest relatives of the testator, of those who are not aliens; but their mother is a nearer relative, and was living at the death of the testator, and is still living, and is an alien.

Before the Revised Statutes, the plaintiff, Mary, could have had no title: 1st. Because her mother was living and was a nearer relative; and 2d. Because Mary must trace her title through her mother, and the alienism of any person through whom she must trace her title, and who, but for the alienism, could, if living, inherit, was a bar to the claim of the one thus tracing title. If her mother had been dead, the last objection would have effectually prevented any title coming to Mary, the rule of the previous law being that in tracing title, if you come to one who is a nearer relative than any other, and he is an alien, he and all his descendants are passed by as if they had never existed, and that the alienism of an ancestor, even although he be deceased, is a bar to all his descendents; the taint of alienism affecting the blood of all who claimed through him. This taint of alienism in the deceased ancestor of one who was the nearest relative, and otherwise entitled to the estate, was deemed a harsh rule (3 *R. S.*, 605); and it was enacted in the Revised Statutes that "no person capable of inheriting, under the provisions of this chapter, shall be precluded from such inheritance by reason of the alienism of any ancestor of such person." (1 *R. S.*, 754, § 22.) This section only removes the disability of alienism in the ancestor; it made no other alteration in the law of descent, and it expressly made it only in favor of one capable of inheriting under the provisions of that chapter. That chapter made no provision by which a child, while his parent was living, could inherit from a relative of the

Seely *against* Engell.

parent, where the child must trace his title through the parent; neither did the common law. Both rules of descent confer title on the one nearest to the deceased, who is other-wise capable of inheriting ; neither of them confers it on a descendant of a living person, except in the case of what is called an immediate descent, or from brother to brother, where the parent is not noticed in the chain of title, as by the common law, he could in no event inherit from his child. For these reasons, even if the term ancestor may include a living parent in some cases, the plaintiff could not recover. Ancestor may sometimes be thus used, but not in a statute of descents, or where accuracy of language is studied, unless it be for the purpose of distinguishing between the living and the deceased. This opinion con-forms to that given in *The People* v. *Irvin*, 21 *W.*, 128. The judgment should be affirmed.

Judgment affirmed.