WILLIAM J. LEONARD, Comptroller of the Treasury,
vs. JOHN WISEMAN.

*Construction of the Act of 1867, ch. 372, relating to the payment of Bounties to Volunteers, &c.—Judicial construction of Legislative enactments.*

W entered the military service of the United States on the 21st of October, 1864, as a volunteer, and was at that time duly enrolled to serve for one year as a private in Company C, 11th Regiment Maryland Volunteers, was regularly mustered into the service of the United States, and was accredited to the quota of Maryland, under the call of the President of July 18th, 1864. He continued to serve the United States in that capacity till honorably discharged. HELD:

That under the Act of 1867, ch. 372, relating to the payment of bounties to volunteers and drafted men, W is entitled to a bounty of $300.

Where a law is plain and unambiguous, and free from all objection on constitutional grounds, passed upon a subject clearly within the province of the Legislature, Courts have no power to set it aside, or evade its operation by forced and unreasonable construction. If it has been passed improvidently, the responsibility is with the Legislature and not with the Court.

APPEAL from the Superior Court of Baltimore City.

The cause was argued before BARTOL, C. J., STEWART, BRENT and MILLER, J.

*A. Leo Knott* (State's Attorney for Baltimore city) and *Isaac D. Jones* (Attorney-General) for the appellant.

*William S. Waters* and *William H. Purnell,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This is an appeal from a *pro forma* order of the Superior Court directing a *mandamus* to issue against the appellant, as Comptroller of the Treasury, requiring him to issue his

warrant upon the Treasurer to pay to the appellee three hundred dollars for bounty alleged to be due him under the bounty laws of the State.

The facts as set forth in the petition, and not denied, are as follows:

The appellee entered the military service of the United States on the 21st of October, 1864, as a volunteer, and was at that time duly enrolled to serve for one year as a private in Company C, 11th Regiment Maryland Volunteers, was regularly mustered into the service of the United States, and was accredited to the quota of Maryland, under the call of the President of July 18th, 1864. He continued to serve the United States in that capacity till honorably discharged.

The facts being admitted, the only question presented by the appeal is, whether the appellee is entitled to a bounty of three hundred dollars under the act of 1867, ch. 372. That act declares:

"That the provisions of ch. 15 of 1864 and ch. 373 of 1864, and the supplements thereto, be and the same are hereby extended to embrace all volunteers and drafted men, who entered the United States service from the 1st day of April, 1864, to the 18th day of December, 1864, and also such other persons who entered the service or furnished substitutes, who were mustered into the service of the United States, and credited to the call of the President of the 19th of December, 1864: Provided, such volunteers or drafted men have been regularly mustered by a duly authorized officer of the United States, and accredited to the quotas of the State of Maryland."

In order to understand the meaning and effect of this law, it is necessary briefly to refer to the previous legislation on the subject of bounties.

By the Acts of 1864, ch. 15, and 1864, ch. 373, a bounty of three hundred dollars was given to "every person, except negro slaves, who should enlist before the 1st day

of April, 1864, to serve for three years, unless sooner discharged, as part of the quota of the State, &c."

It appears by the latter Act that they were passed to meet the exigency of the call made by the President on the 17th of October, 1863, for three years men, under which no volunteers for a less term than three years could be received or credited to the quota of the State. Afterwards on the 4th of July, 1864, Congress passed a law authorizing the President to call for volunteers for one, two, or three years, at the option of the volunteer ; and on the 18th day of July, 1864, the President made a call for 500,000 volunteers under that Act. And on the 19th of December, 1864, a supplementary call was made by the President under the same Act.

When the Legislature met in 1865, a draft was pending under this last call, and to meet the exigency, the Legislature, on the 3d of February, 1865, passed the Act of 1865, ch. 33, by which they provided for a bounty of three hundred dollars for each volunteer or person drafted or furnishing a substitute, under the call of the Preident of the 19th of December, 1864, or under any other similar call which might thereafter be made. At the same session another Act was passed, ch. 106, amending ch. 33, in some of its provisions, not material to be noticed in the present inquiry.

It thus appears that while under the Acts of 1864, ch. 15 and ch. 373, a bounty of $300 was given to each person who might volunteer or furnish a substitute before the 1st day of April, 1864 ; and by the Acts of 1865, ch. 33 and ch. 106, a similar bounty was given to each person who might be drafted, or furnish a substitute, or who might volunteer under the call of Dec. 19th, 1864, no provision of law whatever existed, giving bounties to persons who might enter the service during the intermediate time between the 1st day of April, 1864, and the 19th day of December, 1864. It was during that period

Leonard *vs.* Wiseman.

the appellee volunteered and was mustered into the service, to wit, on the 21st day of October, 1864; and he now claims the bounty of $300, provided under the Act of 1867, ch. 372. That Act, as we have seen, in express terms, covered the period not embraced by the Acts of 1864 and 1865. It declares *that the provisions of ch.* 15 *of* 1864 *and ch.* 373 *of* 1864, *and the supplements thereto, shall* be and *are hereby extended to embrace all volunteers and drafted men who entered the United States service from the* 1*st day of April,* 1864 *to the* 18*th day of December,* 1864.

It would be difficult to find language more plain and explicit for the purpose of embracing the appellee within its scope and operation. All volunteers and drafted men who entered the service during the period named, are comprehended by the words of the law. The only restriction is found in the proviso: " Provided said volunteers and drafted men have been regularly mustered by a duly authorized officer of the United States, and accredited to the quotas of the State of Maryland."

According to the admitted facts of the case, the appellee comes within this proviso. Then upon what ground can the Court deny to him the benefit of the law ? On such a subject the legislative will is supreme, and when that has been plainly expressed, Courts of justice have no other duty to perform but to declare the law as it has been enacted, and to carry it into execution. They have no right to sit in judgment upon the wisdom of the Legislature, or to pass upon the expediency of the law ; those are questions exclusively for the Legislature.

Where the law is plain and unambiguous, and free from all objection on constitutional grounds, passed upon a subject clearly within the province of the Legislature, Courts have no power to set it aside, or evade its operation by forced and unreasonable construction. If it has been passed improvidently, the responsibility is with the Legislature and not with the Court.

" No principle is more firmly established, or rests upon more secure foundations than the rule which declares, when a law is plain and unambiguous, the Legislature shall be intended to mean what they have plainly expressed, and consequently no room is left for construction." *Bartlett vs. Morris*, 9 *Porter*, 266; *Faw vs. Marsteller*, 2 *Cranch*, 10; *United States vs. Fisher*, 2 *Cranch*, 358; *Paulina's Cargo vs. United States*, 7 *Cranch*, 52.

This rule is, in our opinion, strictly applicable to the present case. Looking at the words of the Act of 1867, there seems to be no room to doubt that it secures to the appellee the bounty of $300 claimed in his petition.

By the Acts of 1864, chs. 15 and 373, a bounty of $300 was secured to the persons therein described; the Act of 1867 extends the provisions of those Acts and of the supplements thereto, so as to embrace the class of persons to which the appellee belongs. The conclusion, therefore, is irresistible that he is entitled to the same bounty.

It has been argued on the part of the appellant that, because the Acts of 1864 gave bounties only to persons who enlisted for *three* years, this Act of 1867 ought to be construed to apply only to *three years men*, and that the appellee, who enlisted for one year, is excluded from its operation. But the Act of 1867 is not so limited in its terms; it embraces *all volunteers and drafted men* who entered the service within the time specified. The Act is silent as to the time for which a party may have enlisted. Provided he was regularly mustered into the service and accredited as a part of the quota of the State, he comes within the provisions of the Act.

Regarding this law as free from doubt or ambiguity on its face, we have not considered it necessary to resort to other aids in order to arrive at its true construction. These aids, however, all tend to fortify the conclusion we have stated.

If we examine the Acts of 1865, which are in *pari materia*, and may be considered, together with the Acts of 1864 and 1867, as forming one system, it is manifest that while they employ similar terms in describing the objects of their bounty, they embrace one year volunteers. Under these laws, before the passage of the Act of 1867, every volunteer, whether for one, two or three years, provided he had been accredited to a quota of the State, had been given a bounty, except those described in this Act; and it is impossible to discover the intention of this law, unless it was to embrace within the operation of the same system this class of persons, who, while they occupied the same position towards the State, had been omitted by the previous legislation.

When the Act of 1867 was passed, the war had ended, the military forces had been disbanded, and no reason can be imagined why the Legislature, in providing a bounty for persons who entered the service between the 1st of April, 1864 and the 18th of December, 1864, should distinguish between such as had enlisted for three years, and such as had enlisted for one year. Both had contributed alike to save the citizens from the draft, for both alike had been accredited to the State's quota. The length of service of each had been the same, for both had been discharged before they had served *one year*, by the ending of the war. But we do not rest our construction of this law upon a consideration of what, under the circumstances, might be reasonable.

Our judgment rests upon the plain provisions of the Act. They make no distinction between volunteers for one year, or three years; all are included provided they were accredited to the quota of the State.

In every point of view in which we have considered this case, it has appeared to us quite clear that, under the Act of 1867, the appellee is entitled to the bounty claimed

in his petition. The order granting the writ of mandamus will therefore be affirmed.

*Judgment affirmed.*

(Decided 30th June, 1869.)

STEWART, J., delivered the following dissenting opinion:

According to the judgment I have been able to form in this case, the Comptroller was fully justified in his refusal to issue the warrant on the Treasurer for the payment of the claim of the appellee.

The ambiguity and defect of the Act of 1867, ch. 372, render its construction more a matter of conjecture than of judicial interpretation.

The doubtful tenor of the Act, in my comprehension, would fully have justified the Court in leaving its true construction and purpose to be settled by the Legislature, by some adequate amendment or declaratory law.

It is not for the Courts, but those who make the laws, to supply defects therein ; and it is certainly neither the province or duty of the Courts, under color of construction, to cure the material omissions of the law.

Besides this difficulty, growing out of the obscurity of the Act and the uncertainty of giving it proper and definite application, assuming it to have had constitutional authority, it has not the characteristics prescribed and demanded by the Constitution of 1864, then in force, to give the Act the binding force of law, and therefore, being in excess of legislative power, it is void.

To provide wholesome safeguards for the security of the money in the Treasury of the State, and prevent it being drawn therefrom, except for specific, defined and justifiable purposes, the fundamental law of the State had wisely prescribed certain conditions and limitations, obligatory upon all the departments of the government.

Indeed, the whole scope and tendency of the Constitution of 1864, as well as the existing Constitution, it may

be observed in this connection, are utterly antagonistic to the validity of this Act, as not being in accordance with constitutional requirement.

·Art. 3, sec. 31, of the Constitution of 1864, expressly and emphatically condemns the passage of such an Act, by declaring in terms, it appears to me, plain, unequivocal and mandatory, that " no money shall be drawn from the Treasury of the State " (Constitution of 1867 has the additional restriction,) " by any order or resolution," " except in accordance with an appropriation by law, and every such law shall *distinctly specify* the *sum* appropriated, and the *object* to which it shall be *applied.*"

It will be seen from this provision that no money can be drawn from the Treasury except by legislative appropriation, *distinctly specifying* the sum appropriated, and the *object* of the same.

Upon what solid ground can it be maintained that the Act now in question is fortified and supported by these certain, specific and indispensable requirements ? No sum is *distinctly specified* in the Act, and as to the *precise object* and purpose, it is left to the doubtful interpretation of a multiplicity of antecedent Acts and supplements, the constitutionality of which might also be a matter of grave doubt.

If such legislation can be sustained in the face of constitutional provision, where is to be the limit to legislative action ?

By the 34th sec. of same Art., (and 35th sec. of 3d Art. of the present Constitution,) it is declared " no extra compensation shall be granted or allowed by the General Assembly, to any public officer, agent, servant or contractor, after the service shall have been rendered or the contract entered into."

If this Act of 1867 were designed to make additional compensation or allowance to the appellee, clearly the Legislature are forbidden to do so ; but if the officer,

agent, or other employé can receive a gift, gratuity, or bounty *eo nomine*, of what value is the provision?

But if a bounty be intended, the Legislature, upon every principle of fair construction, must so *distinctly* declare.

The existing Constitution, by the 52d sec., 3d Art., contains this additional provision, to wit: "The General Assembly shall appropriate no money out of the Treasury for payment of any private claim against the State exceeding three hundred dollars, unless said claim shall have been first presented to the Comptroller of the Treasury, together with the proofs upon which the same is founded, and reported upon by him."

It will be seen by this constitutional requirement, which may well be referred to, argumentatively at least, with what caution the Treasury is endeavored to be guarded against party legislative action, even in regard to claims upon the State, by requiring the proof to be first presented to the Comptroller, and reported upon by that highly responsible financial officer.

By the 28th sec. of 3d Art. of the Constitution of 1864, provision is made that "every law enacted by the General Assembly, shall embrace but one subject, and that shall be described in its title, and no law or section shall be revised or amended by reference to its title or section only," and the present Constitution by Art. 3, sec. 29, makes this addition: "nor shall any law be construed, by reason of its title, to grant powers or confer rights which are not expressly contained in the body of the Act."

These provisions of the Constitutions of 1864 and 1867 also evince, in unmistakable terms, the cautious effort to surround the legislative department as the other departments had been, by provisions adapted to the nature of the duties pertaining thereto, in order to prevent improvident and incongruous legislation upon all subjects, including, of course, appropriations of the public moneys.

If the prescribed and indispensable requirements of the fundamental law had been regarded, no such controversy as this could have arisen.

This Act of 1867, ch. 372, being not only obscure but essentially defective, and without constitutional sanction, I think the action of the Comptroller refusing his warrant, eminently proper, and fully authorized by the character of this Act, and ought to be sustained, and the *pro forma* order of the Court below, for the *mandamus*, reversed.

Differing from the conclusions of a majority of my brethren upon the important questions involved in this case, I have deemed it proper and just, briefly to record the grounds of my dissent.