This was a libel in personam, filed in the district court [by Joshua Remington and others], to recover damages for a collision, alleged to have been caused by the steamship Indian Empire, a vessel owned by the respondents, a corporation. On the hearing in the district court, objections to a recovery, on the ground that there was no such corporation as the respondents, and that they were not the owners of the vessel in question, were sustained, and the libel was dismissed on those grounds, without any ' testimony having been put in on the part of the respondents, in respect to the merits. [Case unreported.] The libellants appealed to this court, and, by further testimony, taken on the appeal, the objections in question were removed.

Charles Donohue, for libellants.
Erastus C. Benedict, for respondents.

NELSON, Circuit Justice. The decree of the court below must be reversed, but I have had some difficulty as to the further disposition of the case. The only evidence found in the record, in respect to the collision, is that given by the master of the libellants' vessel. In view of the grounds on which the court below disposed of the case, I am inclined to think, that that evidence ought not to be received here as plenary proof of the collision, on this appeal. I shall, therefore, direct the case to stand, for proofs to be taken by the respective parties in this court, upon the merits, with liberty to either party to amend his pleading, preparatory to the taking of the proofs.

---

REMINGTON (BERDAN FIRE ARMS MANUF'G CO. v.). See Case No. 1,336.

REMINGTON (GOODRICH v.). See Case No. 5,546.

REMINGTON (JUILLARD v.). See Case No. 7,572.

REMINGTON (LAWRENCE v.). See Case No. 8,141.

---

## Case No. 11,696.

REMINGTON v. LINTHICUM et al.

[5 Cranch, C. C. 345.] [1]

Circuit Court, District of Columbia. Nov. Term, 1837.

REPLEVIN—RETURN OF PROPERTY—DISTRESS FOR RENT—EXECUTION.

1. If the marshal takes the goods of a tenant in execution, and before he removes them, the landlord distrains them for rent; and the marshal then removes them from the premises, without paying a year's rent to the landlord who then replevies them, the court will, on motion of the defendant, at the return of the writ, order the goods to be returned to the defendant, upon giving a sufficient bond to return them, &c.

2. The return, in such case, is a matter of course, unless the court should be satisfied that

[1] [Reported by Hon. William Cranch, Chief Judge.]

the defendant obtained possession of the property by force or fraud; or that the possession being first in the plaintiff, was got or retained by the defendant, without proper authority or right derived from the plaintiff.

Replevin, returnable at the present term.

Mr. Marbury, for defendants, moved for a return of the property upon giving the usual retorno habendo bond.

The circumstances of the case were these: The defendant, Hunter, the marshal, levied an execution in favor of Otho M. Linthicum, the other defendant, upon the goods of one Offutt, who was tenant, and owed rent to the plaintiff, Remington. After the goods were seized in execution by the marshal, the plaintiff, William Remington, the landlord, distrained the same goods for his rent. The marshal, without paying the rent, removed the goods to the house of the defendant, Linthicum, where Remington, the plaintiff in the present suit, replevied them. At the return of the writ, Mr. Marbury moved for a return of the property, upon giving the usual bond; and contended that by the levy of the goods under the fieri facias, they were in the custody of the law, and the plaintiff could not lawfully distrain or replevy them (Comyn, Landl. & Ten. 386, 387); his only remedy being an action or a motion against the marshal for removing the goods, without paying one year's rent (Id. 395, 396).

But the question now is, not whether the marshal had a right to levy the execution upon the goods of the tenant, and to remove them without paying the rent, but whether the defendant has not the common right to a return of the property upon giving the usual bond. The act of Maryland of 1785 (chapter 80, § 14) authorizes the court to refuse a return only in cases where the defendant has obtained the possession by fraud or force; or where the possession, being first in the plaintiff, was got or retained by the defendant, without proper authority or right derived from the plaintiff. In the present case, the defendant did not obtain the possession by force or fraud, and the plaintiff was not first in possession. The court, therefore, is not, by that statute, authorized to refuse a return of the property upon the usual bond. Before the statute of 8 Anne, c. 14, the landlord could not distrain goods taken in execution, because they were in custodia legis; and that statute does not give him any such right; it only forbids the sheriff to remove the goods before the rent is paid; and authorizes him to levy the money paid for rent, as well as the execution money.

Messrs. Brent & Brent, contra, cited Arnitt v. Garnett, 3 Barn. & Ald. 440, and contended that the landlord is not confined to his action on the case against the marshal for removing the goods without paying the rent. He had a right to distrain them before they were removed. The statute expressly declares that the goods shall not be liable to·be taken by virtue of an execution, on any pretence what-

soever, unless the party, at whose suit the execution is sued out, shall pay the rent before removal of the goods from the premises. The goods therefore could not be taken by the marshal, and were not in custodia legis, when the plaintiff levied his distress. By that distress he had a qualified property in the goods, which will maintain his replevin. Henchett v. Kimpson, 2 Wils. 140; Comyn, Landl. & Ten. 396.

THE COURT (THRUSTON, Circuit Judge, absent), ordered a return of the property upon the usual bond being given.

---

REMINGTON (LINTHICUM v.). See Case No. 8,377.

---

## REMNANTS.

[Note. Additional cases cited under this title will be found arranged in alphabetical order under the names of the vessels; e. g. "Remnants of the Caithneshire." See The Caithneshire, Case No. 2,294.]

---

## Case No. 11,697.

### REMNANTS IN COURT.

### [Olc. 382.] [1]

District Court, S. D. New York. Aug., 1846.

PRACTICE IN ADMIRALTY—REMNANTS—HOW TREATED—MARITIME LIENS—MORTGAGE.

1. The surpluses or remnants of proceeds on the sale of a ship under the process of the court, are a representative of the ship, and subject to claims which might be enforced against her in rem.

2. Services or supplies furnished a domestic vessel in her home port, at the request of the master and owner, to fit her out for a foreign voyage, and to be paid for on her return to her home port, acquire no lien or privilege upon the ship under the act of this state. 2 Rev. St. 405, § 2. They are personal credits to the parties. Such debts, accordingly, have no privilege of payment as against remnants in court.

3. A mortgage debt against a ship will, in marshalling her proceeds for distribution, be entitled, after satisfaction of privileged and lien debts, to payment as against the owner.

4. Quere, whether the court can take cognizance of debts of the ship-owner which do not possess maritime privileges, and apply a distributive part of remnants in the registry to them?

[Cited in Hill v. The Golden Gate, Case No. 6,491.]

In admiralty. Tyson & Judah filed their libel and petition, seeking to have the proceeds or remnants of the ship Panama paid to them in satisfaction of their debts, and to prohibit the payment of the moneys to Cameron or Quincy, the claimants in the action which produced the remnants. The ship was condemned in April last—The Panama [Case No. 10,703]—to be sold in satisfaction of a bottomry loan, and after fulfilling that decree, there are remnants of her proceeds in court undisposed of. These applicants claim that balance, alleging they have a prior equi-

ty to it over Cameron and Quincy, who also claimed it against each other. The petitioners allege there is due them a large sum for services and supplies furnished by them to the ship in this port, where she is owned, to fit her out for a voyage to Stettin; and that the day she was ready to sail and about to get under way, she was arrested in the action on the bottomry hypothecation, and that thus the voyage was broken up. They also allege that Quincy was the real owner of the ship, and that they are entitled to her proceeds in preference to him. Quincy opposed the application, insisting that the petitioners' debts never possessed any lien or privilege upon the ship or her proceeds. The debts of the petitioners arose from services, supplies, materials, &c., furnished by them to the master and owner of the ship whilst she was preparing for the voyage above mentioned, on an agreement that payment therefor should be made on the return of the ship to this port. It was also urged, in opposition to the petitioners, that the mortgage debt had a privilege of payment against the remnants of the ship in court, and that the claims of the applicants were no lien on the ship or the remnants, and not within the jurisdiction of this court. The essential facts of the case are sufficiently stated in the opinion of the court.

S. Judah, for petitioners.
F. B. Cutting, for Quincy.

BETTS, District Judge. The supplies, satisfaction for which is claimed in this proceeding, were purchased by the master and owner of the ship, on an agreement that payment should be made after her return from the voyage then expected to be made to Stettin. The Panama [supra]. She was fitting out for a voyage to that port, and after getting ready for sea and about to sail, she was arrested by a bottomry creditor, and was condemned to be sold, and the voyage was thus broken up. Cameron, her master and owner, resided in this port, and the mortgage upon her to Quincy was executed and duly registered here. It is contended by the petitioners that they are, by means of the judicial sale, released from the terms of credit, and remitted to their original privilege or right of lien upon the vessel for the outfit supplied her. I think it plain that the debt due the petitioners had no privilege or lien upon the ship when she was arrested and sold in the bottomry action. The law of this state authorizing a lien upon domestic vessels, declares it shall cease immediately after the vessel shall have left the state. 2 Rev. St. p. 405, § 2.

The supreme court, in examining the effect of such lien, decided that it is to be regarded as waived, when the contract contains stipulations inconsistent with the lien, or from which it may be fairly inferred that a waiver was intended, and the personal re-

---